Heather R. Boshak
FOX ROTHSCHILD LLP
Formed in the Commonwealth of Pennsylvania
75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
*Attorneys for Defendant*
*Magellan Health Services, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARGARET HOWE,<br><br>       Plaintiff,<br><br>vs.<br><br>MAGELLAN HEALTH SERVICES, INC.,<br>JOHN DOE AND JANE DOES 1-10 (fictitious<br>individuals presently unidentifiable individuals)<br>AND ABC CORPORATIONS 1-10 (fictitious<br>corporations or other business entities presently<br>unidentifiable),<br><br>       Defendants. | Civil Action No.<br><br><br>**NOTICE OF REMOVAL**<br>(Diversity) |

TO:   THE HONORABLE JUDGES OF THE
       UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF NEW JERSEY

Defendant Magellan Health Services, Inc. ("Magellan"), a corporation organized under

the laws of the State of Delaware, with its principal place of business in the State of Connecticut,

by and through its attorneys, Fox Rothschild LLP, respectfully says:

1.      Plaintiff Margaret Howe commenced the above-captioned action on or about March 7, 2011 by filing a Complaint in the Superior Court of New Jersey, Law Division, Morris County, entitled <u>Margaret Howe v. Magellan Health Services, Inc., John Does and Jane Does 1-10 (fictitious individuals presently unidentifiable individuals) and ABC Corporations 1-10 (fictitious corporations or other business entities presently unidentifiable)</u>, Docket No. MRS-L-685-11.  Said action is now pending in that Court.

2.      On March 14, 2011, Plaintiff served a copy of the Summons and Complaint upon Magellan.  Receipt of the Summons and Complaint on that date was Magellan's first receipt of a pleading containing a claim for relief asserted by Plaintiff which could be removed to this Court.  A copy of the foregoing papers, together with the Acknowledgment of Service, which constitute the pleadings to date, are annexed hereto as Exhibit A.

3.      The Court has jurisdiction over this matter, and removal is proper, pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, in that:

a.      Magellan is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 55 Nod Road, Avon, Connecticut 06001.

b.      According to the Complaint, Plaintiff resides at 21 Shelley Place, Morristown, New Jersey  07960.

e.      The above-captioned action is a civil action in which the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.  Therefore, this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, which may be properly removed pursuant to 28 U.S.C. § 1441.

- 2 -

4.      This Notice of Removal is filed within the time provided by 29 U.S.C. § 1446(b) and the Federal Rules of Civil Procedure.

5.      Upon the filing of this Notice of Removal, Magellan shall give written notice thereof to Andrew S. Berns, Esq., of Einhorn, Harris, Ascher, Barbarito & Frost, attorneys for Plaintiff, and Magellan shall file copies of said Notice and Notice of Filing of Removal with the Court Clerk, Superior Court of New Jersey, Law Division, Morris County, New Jersey.

6.      By filing this notice, Magellan does not waive any defenses which may be available to it, specifically including, but not limited to, the absence of venue in this Court or in the Court from which this action has been removed.

7.      There are no other named defendants in this case, so no further consent for removal is needed.

WHEREFORE, Magellan removes the above-captioned action now pending against it in the Superior Court of New Jersey, Law Division, Morris County, to the United States District Court for the District of New Jersey, wherein it shall proceed as an action originally commenced therein.

Respectfully submitted,

FOX ROTHSCHILD LLP

By: /s Heather R. Boshak
Heather R. Boshak
*Attorneys for Defendant*
*Magellan Health Services, Inc.*

Dated: April 8, 2011

- 3 -

RL1 891218v1

## CERTIFICATE OF SERVICE
### (via FedEx)

I hereby certify that on this date I caused a true copy of the foregoing Notice of Removal to

be served on the attorneys for Plaintiff, via prepaid overnight express delivery (FedEx) sent to their

last known address as follows:

Andrew S. Berns, Esq.
Einhorn, Harris, Ascher, Barbarito & Frost
Attorneys for Plaintiff
165 E. Main Street
P.O. Box 3010
Denville, NJ 07834-3010

I hereby further certify that on this date I caused a Notice of Filing of Removal together

with a copy of the Notice of Removal to be delivered for filing by prepaid overnight express

delivery (FedEx) to:

Clerk, Superior Court of New Jersey
Law Division, Morris County
Morris County Courthouse
Washington and Court Streets
Morristown, NJ 07963

I certify that the foregoing statements made by me are true. I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.


      s/Heather R. Boshak
         Heather R. Boshak

Dated: April 8, 2011

- 4 -

RL1 891218v1

# EXHIBIT A

EINHORN, HARRIS, ASCHER, BARBARITO & FROST
A Professional Corporation
165 E. Main Street
P.O. Box 3010
Denville, New Jersey 07834-3010
(973) 627-7300
Attorneys for Plaintiff

| | |
|---|---|
| MARGARET HOWE<br><br>Plaintiffs,<br><br>vs.<br><br>MAGELLAN HEALTH SERVICES, INC.,<br>JOHN DOE AND JANE DOES 1-10<br>(fictitious individuals presently<br>unidentifiable individuals) and ABC<br>CORPORATIONS 1-10 (fictitious<br>corporations or other business entities<br>presently unidentifiable)<br><br>Defendants. | ) SUPERIOR COURT OF NEW JERSEY<br>) LAW DIVISION : MORRIS COUNTY<br>)<br>) Docket No.: MRS-L-00685-011<br>)        Civil Action<br>)<br>)        SUMMONS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FROM THE STATE OF NEW JERSEY

## TO THE ABOVE-NAMED DEFENDANT(S): **MAGELLAN HEALTH SERVICES, INC., ITS AGENTS, SERVANTS AND/OR EMPLOYEES OR THE PERSON IN CHARGE OF PLACE OF BUSINESS**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written Answer or motion and proof of service with the deputy clerk of the Superior Court in the County above within thirty-five (35) days from the date you receive this Summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the Complaint is one in foreclosure, then you must file your written Answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN 971, Trenton, New Jersey 08625. A filing fee payable to the Clerk of the Superior

Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your Answer or motion when it is filed. You must also send a copy of your Answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff. if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written Answer or motion (with fee of $135.00 for Law Division and $135.00 for Chancery Division and completed Case Information Statement) if you want the Court to hear your defense.

If you do not file a written Answer or motion within thirty-five (35) days, the Court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services Office in the county where you live. A list of these offices is provided. If you do not have an attorney and are eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Jennifer M. Perez

*Jennifer M. Perez,*
Acting Clerk of the Superior Court

DATED: March 14, 2011

Name of defendant to be served:       MAGELLAN HEALTH SERVICES
Address of the defendant to be served:   6950 COLUMBIA GATEWAY DRIVE
                                         COLUMBUS, MD 21046

-2-

*ATLANTIC COUNTY*
*1Deputy Clerk of the*
*Superior Court*
*Civil Division, Direct Filing*
*1201 Bacharach Blvd.*
*First Fl.*
*Atlantic City, NJ 08401*
*LAWYER REFERRAL*
*609-345-3444*
*LEGAL SERVICES*
*609-348-4200*

*CAPE MAY COUNTY*
*Deputy Clerk of the*
*Superior Court*
*Central Processing Office*
*9 N. Main Street*
*Box DN-209*
*Cape May Court House, NJ 08210*
*LAWYER REFERRAL*
*609-463-0313*
*LEGAL SERVICES*
*609-465-3001*

*HUDSON COUNTY*
*Deputy Clerk of the Superior Court*
*Superior Court*
*Civil Records Dept.*
*Brennan Court House - 1st Floor*
*583 Newark Ave.*
*Jersey City, NJ 07306*
*LAWYER REFERRAL*
*201-798-2727*
*LEGAL SERVICES*
*201-792-6363*

*BERGEN COUNTY*
*Deputy Clerk of the*
*Superior Court*
*Case Processing Section*
*Room 119*
*Justice Center - 10 Main St.*
*Hackensack, NJ 07601-0769*
*LAWYER REFERRAL*
*201-488-0044*
*LEGAL SERVICES*
*201-487-2166*

*CUMBERLAND COUNTY*
*Deputy Clerk of the*
*Superior Court*
*Civil Case Management*
*   Office*
*Broad & Fayette Sts.*
*P.O. Box 615*
*Bridgeton, NJ 08302*
*LAWYER REFERRAL*
*856-692-6207*
*LEGAL SERVICES*
*856-451-0003*

*HUNTERDON COUNTY*
*Deputy Clerk of the Superior Court*
*Civil Division*
*65 Park Avenue*
*Flemington, NJ 08862*
*LAWYER REFERRAL*
*908-735-2611*
*LEGAL SERVICES*
*908-782-7979*

*BURLINGTON COUNTY*
*Deputy Clerk of the*
*Superior Court*
*Central Processing Office*
*Attn: Judicial Intake*
*First Floor Courts Facility*
*49 Rancocas Rd.*
*Mt. Holly, NJ 08060*
*LAWYER REFERRAL*
*609-261-4862*
*LEGAL SERVICES*
*609 261-1088*

*ESSEX COUNTY*
*Deputy Clerk of the*
*Superior Court*
*237 Hall of Records*
*465 Martin L King Jr Blvd*
*Newark, NJ 07102*
*LAWYER REFERRAL*
*973-622-7753*
*LEGAL SERVICES*
*973-624-4500*

*MERCER COUNTY*
*Deputy Clerk of the Superior Court*
*Local Filing Office, Courthouse*
*175 South Broad St.*
*P.O. Box 8068*
*Trenton, NJ 08650*
*LAWYER REFERRAL*
*609-585-6200*
*LEGAL SERVICES*
*609-695-6249*

*CAMDEN COUNTY*
*Deputy Clerk of the*
*Superior Court*
*Civil Processing Office*
*1st Fl. Hall of Records*
*101 So. Fifth St.*
*Camden, NJ 08103*
*LAWYER REFERRAL*
*856-964-4520*
*LEGAL SERVICES*
*856-964-2010*

*GLOUCESTER COUNTY*
*Deputy Clerk of the*
*Superior Court*
*Civil Case Management*
*   Office*
*Attn: Intake*
*First Fl., Court House*
*1 North Broad St., P.O. Box 129*
*Woodbury, NJ 08096*
*LAWYER REFERRAL*
*856-848-4589*
*LEGAL SERVICES*
*856-848-5360*

*MIDDLESEX COUNTY*
*Deputy Clerk of the Superior Court*
*Administration Building*
*Third Floor*
*1 Kennedy Sq., P.O. Box 2633*
*New Brunswick, NJ 08903-2633*
*LAWYER REFERRAL*
*732-828-0053*
*LEGAL SERVICES*
*732-249-7600*

-3-

MONMOUTH COUNTY
Deputy Clerk of the
Superior Court
71 Monument Park
P.O. Box 1262
Court House, East Wing
Freehold, NJ 07728-1262
LAWYER REFERRAL
732-431-5544
LEGAL SERVICES
732-866-0020

MORRIS COUNTY
Deputy Clerk of the
Superior Court
Civil Division
30 Schuyler Pl.
PO Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
973-267-5882
LEGAL SERVICES
973-285-6911

OCEAN COUNTY
Deputy Clerk of the
Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
732-240-3666
LEGAL SERVICES
732-341-2727

PASSAIC COUNTY
Deputy Clerk of the
Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
LAWYER REFERRAL
973-278-9223
LEGAL SERVICES
973-345-7171

SALEM COUNTY
Deputy Clerk of the
Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
856-935-5629
LEGAL SERVICES
856-964-2010

SOMERSET COUNTY
Deputy Clerk of the
Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
908-685-2323
LEGAL SERVICES
908-231-0840

SUSSEX COUNTY
Deputy Clerk of the
Superior Court
Sussex Cty Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
973-267-5882
LEGAL SERVICES
973-383-7400

UNION COUNTY
Deputy Clerk of the
Superior Court
First Fl., Court House
2 Broad St.
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
908-353-4715
LEGAL SERVICES
908-527-4769

WARREN COUNTY
Deputy Clerk of the
Superior Court
Civil Division Office
Court House
Belvidere, NJ 07823-1500
LAWYER REFERRAL
973-267-5882
LEGAL SERVICES
908-475-2010

- 4 -

**Appendix XII-B1**

| | **CIVIL CASE INFORMATION STATEMENT** (CIS)<br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**<br>if information above the black bar is not completed<br>or attorney's signature is not affixed | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|
|  | | PAYMENT TYPE:  ☐ CK ☐ CG ☐ CA |
| | | CHG/CK NO. |
| | | AMOUNT: |
| | | OVERPAYMENT: |
| | | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>ANDREW S. BERNS, ESQ. | TELEPHONE NUMBER<br>(973) 627-7300 | COUNTY OF VENUE<br>Morris |
|---|---|---|
| FIRM NAME (if applicable)<br>EINHORN, HARRIS, ASCHER, BARBARITO & FROST, P.C. | | DOCKET NUMBER (when available)<br>L-685-11 |
| OFFICE ADDRESS<br>165 EAST MAIN STREET, DENVILLE, NEW JERSEY 07834 | | DOCUMENT TYPE<br>COMPLAINT |
| | | JURY DEMAND  ■ YES  ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>MARGARET HOWE | CAPTION<br>MARGARET HOWE VS. MAGELLAN HEALTH SERVICES, INC. |
|---|---|
| CASE TYPE NUMBER (See reverse side for listing)<br>616 | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☐ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ YES  ■ NO | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ■ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>■ NONE<br>☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>■ YES  ☐ NO | IF YES, IS THAT RELATIONSHIP:<br>■ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS |
|---|---|
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ■ YES  NO | |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

*(stamp, vertical)* RECEIVED AND FILED SUPERIOR COURT CIVIL DIVISION 2011 MAR -7 PH 3: [illegible]

| ♿ DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES  ■ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ■ NO | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *Andrew S Berns*

Effective 07/01/2010, CN 10517-English                                                                 page 1 of 2

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603 AUTO NEGLIGENCE – PERSONAL INJURY
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

**Track III - 450 days' discovery**
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 280 Zelnorm
- 285 Stryker Trident Hip Implants
- 288 Prudential Tort Litigation

**Mass Tort (Track IV)**
- 248 CIBA GEIGY
- 266 HORMONE REPLACEMENT THERAPY (HRT)
- 271 ACCUTANE
- 272 BEXTRA/CELEBREX
- 274 RISPERDAL/SEROQUEL/ZYPREXA
- 275 ORTHO EVRA
- 277 MAHWAH TOXIC DUMP SITE
- 278 ZOMETA/AREDIA
- 279 GADOLINIUM

- 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282 FOSAMAX
- 283 DIGITEK
- 284 NUVARING
- 286 LEVAQUIN
- 287 YAZ/YASMIN/OCELLA
- 601 ASBESTOS
- 619 VIOXX

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

Please check off each applicable category
- ☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

EINHORN, HARRIS, ASCHER, BARBARITO & FROST
A Professional Corporation
165 E. Main Street
P.O. Box 3010
Denville, New Jersey 07834-3010
(973) 627-7300
Attorneys for Plaintiff

| | |
|---|---|
| MARGARET HOWE, ) | |
| ) | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, ) | LAW DIVISION: MORRIS COUNTY |
| ) | |
| vs. ) | Docket No. _____ |
| ) | |
| ) | Civil Action |
| MAGELLAN HEALTH SERVICES, ) | |
| INC., JOHN DOE AND JANE DOES ) | **COMPLAINT** |
| 1-10 (fictitious individuals presently ) | |
| unidentifiable individuals) AND ABC ) | |
| CORPORATIONS 1-10 (fictitious ) | |
| corporations or other business entities ) | |
| presently unidentifiable) ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

Plaintiff, Margaret Howe ("Howe"), a New Jersey resident, residing at 21 Shelley Place,

Morristown, New Jersey 07960, through its counsel, Einhorn, Harris, Ascher, Barbarito & Frost,

P.C. by way of Complaint against the Defendant, Magellan Health Services, Inc. ("Magellan"),

alleges as follows:

## THE PARTIES

1. Plaintiff, Howe, is a former employee of the Defendant, Magellan, and was employed

by Defendant Magellan for approximately four years before her unlawful termination from

Magellan on January 21, 2011. Howe was unlawfully terminated from Magellan in retaliation

for her disclosure and refusal to participate in conduct by Magellan that is unlawful, fraudulent and incompatible with a clear mandate of public policy.

2. Defendant, Magellan, having a principal business address at 6950 Columbia Gateway Drive, Suite 400, Columbia, Maryland, is a Delaware corporation that employed Plaintiff as Manager of the Appeals Department at the time of her termination at its 199 Pomeroy Road, Parsippany, New Jersey office. Magellan is licensed to do business in the State of New Jersey.

3. Defendants, John Does and/or Jane Does 1-10 are fictitious individuals who may have retaliated against or contributed, aided or abetted such conduct.

4. Defendants, ABC Corporations 1-10 are fictitious corporations which may have retaliated against or contributed, aided or abetted such conduct.

## FACTS COMMON TO ALL COUNTS

5. Prior to her termination on January 21, 2011, Howe was employed by Magellan for approximately four years. Howe was hired by Magellan on or about August 26, 2006. Howe voluntarily ceased her employment with Magellan in April 2009. In or around July 2009 Howe was rehired by Magellan and received a promotion in grade level and a raise from her prior position with Magellan.

6. At the time of her termination, Howe was employed as Manager of the Magellan Appeals Department. Howe had maintained this position from August 2006 until her unlawful termination with the exception of a brief interruption from April 2009 until July 2009. Howe's position required her to generate reports and appeal analysis for Magellan and its clients, such as Horizon. Howe supervised a staff of approximately twelve employees at all relevant times.

7. Throughout Howe's employment with Magellan, she was an exemplary employee with a positive performance history. Howe consistently performed well in her performance evaluations, including the year prior to her termination.

2–

8. At all relevant times, Howe's direct supervisor had been Nancy Tingley ("Tingley"). Tingley is employed by Magellan as the Director of Quality Improvement and Compliance. Tingley has been on disability on several occasions during the past two years as a result of serious health issues. During these extended time periods, Howe had assumed many of the employment responsibilities of Tingley and had been required to manage the Appeals Department, without additional staffing or resources. In addition, Howe was required to perform these responsibilities without additional compensation or management level support.

9. On or about November 12, 2010, without any prior warning or notice, Howe received a Performance Improvement Plan ("PIP") from her direct supervisor, Tingley. The PIP was dated November 3, 2010 and was classified as a written warning for poor performance. The PIP falsely alleged that Tingley had two detailed verbal communications with Howe with respect to her alleged inadequate performance as Manager of Appeals. Howe denies any prior verbal or written communication with Tingley regarding her alleged poor performance. Prior to this, Howe had never received any PIP or corrective action plan.

10. The PIP set forth numerous alleged reasons for necessary corrective action. In addition, the PIP set forth five specific expectations. Specifically, the fourth expectation set forth a requirement that Howe "ensure that timeliness performance guarantee standards are met on all appeal cases for fourth quarter 2010." This expectation was not set forth in the reason for corrective action or discussed with Howe upon receipt of the PIP. In fact, this expectation was unachievable without participation in a fraudulent appeal processing scheme that Howe was directed to engage in. Howe made this known to general manager, Tracey Sessa ("Sessa") along with several supervisors.

11. At the time Howe received the PIP, Sessa requested that Howe sign the PIP in order to agree to the corrective action plan set forth in the PIP. Howe refused to sign the PIP

3–

and requested to review the PIP and prepare a response over the weekend. On November 16, 2010 Howe submitted a response to the PIP. Howe's response addressed each area of alleged concern by Magellan and highlighted the many additional responsibilities that Howe was required to assume as a result of Tingley's lengthy disability leaves. Although Howe's written response did not directly address the expectations regarding compliance with turnaround times, this issue was discussed with management.

12. The Appeals Department had always met the performance guarantees with Horizon from the commencement of Howe's employment in August 2006 until the fourth quarter of 2009 when Tingley went out on disability leave.

13. As set forth above, Tingley has taken several lengthy disability leaves beginning in 2008, the most recent beginning on or about October 29, 2010. During this time period, not only were the volume of appeals extensive, but Howe had to perform many of the functions of her supervisor while she was out on leave. In addition, as Magellan management was well aware, Howe was left without adequate resources and staff. Despite Tingley's absence, Tingley continued to run the Appeals Department through frequent emails and telephone communications. Tingley maintained complete oversight of the Appeals Department while out on leave and although Howe assumed many of the responsibilities, she was not given the authority to make changes or any significant decisions in the Appeals Department.

14. Tingley's instruction to Howe and others was that regardless of the circumstances, all appeals were to be processed consistent with the agreed upon turn-around times with Horizon, regardless of the manner in which it was accomplished. Howe refused to operate the Appeals Department in the unlawful manner that Tingley and Magellan demanded while Tingley was out on leave.

15. Throughout her employment with Magellan, Howe and others were instructed by

-4-

Tingley to date all appeal resolution letters utilizing that date the appeal was due, regardless of the actual later date the appeal was processed.

16. Additionally, if there was a significant gap between the date the appeal was supposed to be completed and the later actual date the appeal was processed, no copies of the appeal decision would be provided to the subscriber or Horizon and the document would simply be placed in the file.

17. Howe was instructed by her supervisor to delete any appeal from the system which could not have its date manipulated to show compliance. Magellan concocted this system of fraudulent manipulation of the appeals database so that Horizon could not discover the scheme, and which would insure that all deadlines were met and the performance guarantees fulfilled.

18. Howe was required to participate in this unlawful and fraudulent practice since she commenced employment with Magellan. This scheme was compulsory for the staff and known to many of Magellan's supervisors. The PIP that Howe received evidenced the compulsory nature of the fraudulent practice.

19. Many appeals coordinators were aware of Magellan's expectation that late appeals be manipulated in this fashion in order to avoid missed turn-around times and missed performance guarantees which could result in substantial contractual penalties to Magellan. Upon information and belief, the quarterly contractual penalty with a large customer, Horizon, was approximately $500,000.00. In addition, missed turnaround could impact Magellan's ability to renew its contract with Horizon and other providers.

20. Although Howe was required to participate in this fraudulent practice while Tingley was working, Howe refused to engage in this manipulation of the appeals database while her supervisor was out on leave, which, along with various obstacles and insufficient resources, resulted in missed turn-around times beginning in the fourth quarter of 2009.

5–

21. As a result of these obstacles, many of the appeal turn-around deadlines for the fourth quarter of 2009 and the first quarter 2010 were missed for Horizon, the largest client of Magellan. Upon information and belief, Horizon, along with other Magellan clients, are unaware of Magellan's fraudulent practices.

22. Instead of exercising its rights to a contractual performance penalty under its contract with Magellan, Magellan was placed on a corrective action plan by Horizon as a result of the non-compliance.

23. In an effort to complete the backlog of appeals, Howe and her appeals team worked every weekend from January to April, 2010 to process appeals. In many circumstances, in order to follow the management directives, the Appeals Department simply approved the appeal to reduce the backlog of appeals.

24. The issue of turn-around times and performance guarantees with respect to Howe was first raised in the PIP she received on or around November 12, 2010. In addition to Howe's November 16, 2010 response to the PIP, she discussed the unlawful manipulation of data with Sessa, the general manager and most senior employees at the Parsippany office location, on the day she received the PIP. At that time, Howe discussed the data manipulation with Sessa and the changing of inquiries as set forth above.

25. Furthermore, Howe advised her general manager, Sessa, that the performance guarantees were unattainable and explained to Sessa and Edward Martin ("Martin"), Director of Quality Improvement, the requirements set forth by Tingley and the manipulation of data that had been ongoing for years. Sessa and Martin engaged in an extensive dialogue regarding the unlawful practice by Magellan during a meeting at the Magellan office on or about December 3, 2010.

26. During that December 3, 2010 meeting, Howe explained to Sessa and Martin the

6–

extent of the fraudulent practice being endorsed by the management of Magellan. She described a colleague, also a manager who expressed an unwillingness to handwrite fraudulent dates on the appeal presentation sheets presented to her for approval by subordinates requiring complete review during their training phase with the company. The appeal coordinators were instructed by Magellan to backdate the appeal presentation sheet to the date that the appeal was due, even though the date the appeal presentation sheet was prepared was often well after the due date of the appeal. Upon presentment to the manager by the appeals coordinator, the manager was required to sign and date the presentation sheet. The colleague of Ms. Howe described above, reported to Magellan that she refused to write in a date that predates the date the appeal was processed and then sign the form. Rather than fixing the problem, Magellan instructed the appeals coordinator to type in the date and have the manager sign so that the manager was not entering a fraudulent date. As such, Magellan perpetuated the fraud.

27. Howe advised Sessa and Martin that she had been required to participate in this unlawful practice throughout her employment with Magellan. Howe further advised Sessa and Martin that she refused to manipulate the data for the Horizon account as she had been instructed to do. Howe identified the reasons for the difficulty of the Appeals Department to meet turnaround times.

28. Following Howe's meeting with Sessa and Martin, Howe's job functions were changed and several responsibilities were stripped from her. Howe was required to undertake additional reporting to Sessa and Martin.

29. On or about December 15, 2010, Howe was instructed by Human Resources Generalist, Dan Devenny, that Magellan planned to keep the PIP in place despite her response, explanation and objections. Magellan never responded or agreed to discuss Howe's written response to the PIP.

7-

30. During a meeting with Dan Devenny, Sessa and Doug Bowes on December 15, 2010, Magellan compelled Howe to go out on a paid leave while Magellan allegedly investigated her description of what was taking place in the Appeals Department.

31. Howe was not further questioned or required to provide any additional information following her suspension from Magellan. Upon information and belief, Magellan did not perform an adequate or objective investigation into the fraudulent practices.

32. On January 21, 2011 Howe was terminated by Magellan. Magellan alleged that Howe was terminated for mismanagement of the Appeals Department. This position by Magellan constitutes a pretext for an unlawful termination in retaliation for reporting activities protected by the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

33. Howe was unlawfully terminated by Magellan as a direct and proximate result of her disclosure of the unlawful policy and practice of deception and/or misrepresentation which Magellan required Howe to participate in and which Magellan knowingly defrauded Horizon and other clients of Magellan.

34. As a result of the foregoing, Plaintiff has been damaged and will continue to be damaged.

## FIRST COUNT
## (Conscientious Employee Protection Act)

35. The Plaintiff repeats and realleges the foregoing allegations of the Complaint as if fully set forth herein.

36. Tingley instruction to Howe and others that regardless of the circumstances, all appeals were to be processed consistent with the agreed upon turn-around time with Horizon, regardless of the manner in which it was accomplished. Howe refused to operate the Appeals

8–

Department in the unlawful manner that Tingley and Magellan demanded while Tingley was out on leave.

37. Throughout her employment with Magellan, Howe and others were instructed by Tingley to date all appeal resolution letters utilizing that date the appeal was due, regardless of the actual later date the appeal was processed.

38. Additionally, if there was a significant gap between the date the appeal was supposed to be completed and the later actual date the appeal was processed, no copies of the appeal decision would be provided to the subscriber or Horizon and the document would simply be placed in the file.

39. Howe was instructed by her supervisor to delete any appeal from the system which could not have its date manipulated to show compliance. Magellan concocted this system of fraudulent manipulation of the appeals database so that Horizon could not discover the scheme, and which would insure that all deadlines were met and the performance guarantees fulfilled.

40. Howe was required to participate in this unlawful and fraudulent practice since she commenced employment with Magellan. This scheme was compulsory for the staff and known to many of Magellan's supervisors and managers.

41. This fraudulent practice was concealed by Magellan in an effort to maintain its contractual relationship with clients and obtain quarterly bonuses for meeting turnaround times. Upon information and belief, this practice defrauded Horizon, among numerous other Magellan clients.

42. In or around October 2010, Howe's supervisor went on leave as a result of a medical condition. As a result, Howe assumed many of the employment responsibilities of her supervisor.

43. Howe refused to engage in this manipulation of the appeals database while her

9–

supervisor was out on leave, which, along with various obstacles and insufficient resources, resulted in missed turn-around times beginning in the fourth quarter of 2009.

44. As a result, Howe was placed on a PIP on or about November 12, 2010. As part of the PIP, Howe was directed to meet turnaround times which were impossible to meet without manipulation of the appeals database as set forth above.

45. Upon receipt of the PIP, Howe discussed the fraudulent manipulation of the appeals database with the General Manager of the Parsippany office, Sessa. Howe again refused to participate in this manipulation.

46. On December 3, 2010 Howe again discussed the fraudulent practices of Magellan with Sessa and Martin. Following that meeting Howe was stripped of many of her employment responsibilities.

47. On December 15, 2010, Magellan compelled Howe to go out on a paid leave while Magellan investigated her report.

48. On January 21, 2011 Howe was terminated by Magellan as a result of her disclosure of Magellan's fraudulent practices and refusal to participate.

49. Howe is a protected employee under N.J.S.A. 34:19-3. Howe was disciplined and terminated as a result of her disclosure of Magellan's fraudulent practices and policy/practice of deception and misrepresentation involving a client of Magellan.

50. Howe was disciplined and terminated as a result of her refusal to participate in Magellan's fraudulent practices and policy/practice of deception and misrepresentation involving a client of Magellan. In addition, Howe was disciplined and terminated as a result of her refusal to participate in Magellan's practices that were incompatible with a clear mandate of public policy concerning the public health, safety or welfare.

51. Defendants conduct violates the Conscientious Employee Protection Act as set

10–

forth in N.J.S.A. 34:19-1, *et. seq.*

52. As a proximate result of Defendant's conduct, Plaintiff has been damaged and continues to be damaged.

**WHEREFORE**, Plaintiff requests judgment against Defendant as follows:

a.    Back pay for lost wages, benefits and other remuneration;

b.    Compensatory, consequential and punitive damages;

c.    Reinstatement to Howe's position held at the time of her termination;

d.    Award of costs of suit and attorney fee pursuant to N.J.S.A. 34:19-5;

e.    Any other damages this Court deems just and equitable.

EINHORN, HARRIS, ASCHER,
BARBARITO & FROST
Attorneys for Plaintiff

BY: _____
ANDREW S. BERNS

Dated: March 7, 2011

**JURY DEMAND**

The Plaintiff hereby demands a trial by jury on all triable issues.

**EINHORN, HARRIS, ASCHER,
BARBARITO & FROST**
Attorneys for Plaintiff

BY: _____
ANDREW S. BERNS

Dated: March 7, 2011

11–

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Andrew S. Berns, Esq. is hereby designated trial counsel

for Plaintiff.

**EINHORN, HARRIS, ASCHER,**
**BARBARITO & FROST**
Attorneys for Plaintiff

BY: _____
ANDREW S. BERNS

Dated: March 7, 2011

## CERTIFICATION PURSUANT TO R. 1:38-7(c)

I, Andrew S. Berns, do hereby certify that confidential personal identifiers have been

redacted from documents now submitted to the Court and will be redacted from all

documents submitted in the future in accordance with Rule 1:38-7(b).

**EINHORN, HARRIS, ASCHER,**
**BARBARITO & FROST, P.C.**
Attorneys for Plaintiff

BY: _____
ANDREW S. BERNS

Dated: March 7, 2011

## CERTIFICATION PURSUANT TO RULE 4:5-1

I, Andrew S. Berns certify that:

1. I am an attorney at law of the State of New Jersey, and a Partner with Einhorn,

Harris, Ascher, Barbarito & Frost, PC, attorneys for the Plaintiff, Margaret Howe.

2. Upon information and belief, the matter in controversy is not the subject of any other

action pending in any Court or of a pending arbitration proceeding; and no other action or

12–

arbitration proceeding is contemplated. At this time, Plaintiff knows of no other party who should be joined in the action.

3. The within pleading was filed with the Court and served upon all counsel of record within the time period prescribed by the Rules of the Court, or as agreed to by all the parties.

I CERTIFY that the foregoing statements made by me are true. I am aware that if any of the statements are willfully false, I am subject to punishment.

**EINHORN, HARRIS, ASCHER,
BARBARITO & FROST, P.C.**
Attorney for Plaintiff

BY: _____
ANDREW S. BERNS

Dated: March 7, 2011

13–

EINHORN, HARRIS, ASCHER, BARBARITO & FROST
A Professional Corporation
165 E. Main Street
P.O. Box 3010
Denville, New Jersey 07834-3010
(973) 627-7300
Attorneys for Plaintiff

| | |
|---|---|
| MARGARET HOWE<br><br>    Plaintiff(s),<br><br>vs.<br><br>MAGELLAN HEALTH SERVICES, INC.,<br>JOHN DOE AND JANE DOES 1-10<br>(fictitious individuals presently<br>unidentifiable individuals) AND ABC<br>CORPORATIONS 1-10 (fictitious<br>corporations or other business entities<br>presently unidentifiable)<br><br><br>    Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:MORRIS COUNTY<br><br>Docket No: MRS-L-00685-11<br><br>Civil Action<br><br>**ACKNOWLEDGMENT SERVICE<br>PURSUANT TO R. 4:4-6** |

*INC* MPM

The undersigned representative for defendant, MAGELLAN HEALTH SERVICES in the

above-captioned matter, hereby acknowledges service of the within Summons and Complaint

pursuant to R. 4:4-6 this  14th  day of March, 2011.

MAGELLAN HEALTH SERVICES, INC.   -MPM

BY: _____

MICHAEL P. MCQUILLEN
VICE PRESIDENT AND ASSOCIATE
GENERAL COUNSEL

-1-